---

### In re FOX.

(District Court, D. Kansas, Third Division. June 2, 1920.)

No. 393.

Subrogation ☜14 (1)—Purchaser of bankrupt's property on avoidance of sale subrogated to rights of creditors paid.

Where the sale by a bankrupt of his stock of goods was annulled as in violation of the Bulk Sales Law of the state and the purchaser required to surrender the property or its value for the benefit of creditors, such purchaser, if without actual fraud, is entitled by subrogation to allowance of a claim against the estate equal to the indebtedness of bankrupt, which was paid from the proceeds of the sale.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of L. Fred Fox, doing business as Palace Clothing Company, bankrupt. On review of order of referee, allowing in part and disallowing in part claim of Elam Bros. Affirmed as to part allowed, and reversed as to part disallowed.

Edwards, Kramer & Edwards, of Kansas City, Mo., for petitioning creditors.

Paul H. Kimball, of Parsons, Kan., and Thomas H. Edwards, of Kansas City, Mo., for trustee.

E. L. Burton, of Parsons, Kan., for L. Fred Fox.

W. P. Dillard and W. W. Padgett, both of Ft. Scott, Kan., and C. J. Taylor, of Parsons, Kan., for Elam Bros.

POLLOCK, District Judge. The facts are: The bankrupt sold his stock in trade and business to claimants, a partnership known as Elam Bros. (hereinafter called "claimants"), for the sum of $11,000, made up as follows: Cash, $8,635; indebtedness of the bankrupt assumed by claimants, $1,250; debts owed by the bankrupt to claimants, $1,115. The cash was paid, indebtedness to claimants canceled, and the debts assumed by claimants were renewed by them in such manner as to discharge the bankrupt estate from payment thereof. The sale was made from the bankrupt to claimants in violation of the Bulk Sales Law of the state (Laws 1915, c. 369). For this reason, and on this ground, creditors of the bankrupt, who were not paid out of the cash paid by claimants to the bankrupt, and whose debts were not assumed by claimants, institute this proceeding in bankruptcy.

As claimants were in possession, conducting the business, and could afford to pay more for the goods and business of the bankrupt than any other person, and had paid more than could be obtained in any other manner, in lieu of a receiver of the bankrupt business and goods, claimants gave a bond to pay the estate in bankruptcy the value of the business and goods at the date the same was purchased and taken over by claimants. Thereafter it was ascertained the true value of the stock of goods and business turned over by the bankrupt to claimants at the date same were purchased and taken possession of by claimants was $8,013.46. However, the obligation of the bond given by claimants in lieu of the surrender of the stock of goods, accounts, and business by them purchased from the bankrupt was liquidated and satisfied by the payment by claimants to the trustee in bankruptcy of the sum of $7,000.

Claimants have now presented demands against the bankrupt estate for allowance as follows: (1) The original demand of claimants against the bankrupt estate is $1,115; (2) indebtedness to the bankrupt assumed to be paid by claimants from which the bankrupt estate is relieved, $1,250; (3) cash paid on purchase price to the bankrupt, $8,635, averred to have been used by the bankrupt in satisfying his indebtedness due creditors. Of these claims the first was by the referee allowed. From this order the trustee has petitioned for review. The second and third demands were disallowed by the referee, and claimants have petitioned for review of this order.

The ground on which claimants predicate their demands against the estate is based upon the right to be subrogated to the demands of creditors of the estate which they have paid off and discharged, or from the payment of which they have relieved the bankrupt estate. Under the circumstances of this case, if the demands of claimants be disallowed in toto, the result is they have paid out for a stock of goods and business worth at the time the same was purchased $8,013.46 the sum of $18,000, or $9,365 more than the actual value of the same, which sum will have gone toward the satisfaction of the indebtedness of the bankrupt. However, if in dealing with the business and affairs of the bankrupt estate any wrong or fraud was by claimants practiced upon or intended to be practiced upon creditors of the bankrupt estate, manifestly, a court of equity will grant claimants no relief from the result of their wrongful or fraudulent acts.

Therefore the question to be determined first in this case is this: Was the sale made by the bankrupt to claimants, for which the purchase price has been paid, and which sale has been set aside, and the goods or their value restored to the bankrupt estate for the benefit of creditors, annulled on the ground of any wrong or fraud practiced or intended to be done by claimants to the creditors of the bankrupt estate? If so, equity will afford claimants no relief. On the contrary, if claimants acted in good faith, and with honest purpose and intent in making the purchase of the business and goods of the bankrupt, and paying the purchase money therefor, the valid indebtedness of the bankrupt estate was paid and satisfied out of the property and money of claimants, no good reason appears why, in so far as they may have satisfied the valid claims against the bankrupt, they may not be subrogated to the rights of the creditors whose demands were so paid, and which would have remained valid claims against the bankrupt estate, had the innocent transaction not occurred. And in so holding the creditors not paid by the bankrupt out of money received from claimants are placed in no worse plight than they would have occupied, had the transaction not occurred.

As has been seen, the ground on which the proceedings in bankruptcy are predicated, and the foundation on which the adjudication in bankruptcy rests is the sale made by the bankrupt to claimants was in violation of the Bulk Sales Law of this state, and there is evidence that claimants were advised of this fact. Is a sale so made between a bankrupt and another, as purchaser for full value, a fraud or wrong done the creditors of the bankrupt estate by the purchaser at such sale? The Bulk Sales Law of the state is established by statute, and the construction given by the highest judicial tribunal of the state is controlling here. In Linn County Bank v. Davis, 103 Kan. 672, 175 Pac. 972, it is held as follows:

"The goods, in a sense, constituted a trust fund for the benefit of all creditors alike, and as the purchaser was free from intentional wrong he may justly be subrogated to the rights of the creditors whose claims he has paid off. Note, 51 L. R. A. (N. S.) 343; L. R. A. 1917D, 1067. Nor is any reason apparent why his own claim should not be as favorably treated as those of others. We conclude, therefore, that the plaintiff should recover the propor-

tion of the value of the stock that the amount of his claim bears to the total sum owed by the vendor at the time of the sale, including the debts paid off by the buyer and that originally owing to him."

In the note to 51 L. R. A. (N. S.) 343, supra, it is said:

"While but little authority has been found upon the question as to the rights of a purchaser in violation of the Bulk Sales Law, where the purchase price has been applied to the payment of creditors of the seller, the decision in Fechheimer-Keiffer Co. v. Burton, to the effect that the purchaser is subrogated to the rights of the creditors who have been paid with his money, seems to be sound, and is supported by the other cases most nearly in point."

In Adams v. Young, 200 Mass. 588, 86 N. E. 942, it is said:

"One whose purchase of property has for that reason [fraud] been avoided by the creditors of the seller, being himself free from any actual fraud, may stand in the place of creditors whose demands he has paid out of the property or in consideration of the transfer to himself. * * * So, if he has paid off debts which constituted liens or incumbrances upon the property conveyed to him, he may, for his protection and reimbursement, take by subrogation the rights of the secured creditors whom he has thus paid. * * * The merely constructive fraud of a purchaser will not prevent him from being protected in this manner, if he has not himself actively participated in the fraud."

As the purchaser in this case acted in good faith in the transaction, and the sale was annulled solely on the ground it was made in violation of the Bulk Sales Law of this state, under the authorities, I am of the opinion claimants should be subrogated to the rights of those creditors whose debts were paid out of the purchase money by the bankrupt, and those of which payment has been assumed by claimants and the estate released from payment of the same.

Again, the order of the referee, as shown by his certificate, is based in part on the thought the creditors who received payment from the cash paid by claimants to bankrupt, and the creditors of bankrupt whose debts were assumed by claimants, by reason of the transaction obtained payment in full, while those not so satisfied will receive only a portion of their claims. Hence, it is contended, those creditors who obtained payments in full from the bankrupt in this manner received fraudulent and void preferences. If this position be correct, the same, however, might be said of the individual amounts of claimants standing now allowed under the order of the referee.

But the fact is there is no proof found in the record claimants knew or had reasonable cause to believe the amount they were paying as purchase price to the bankrupt was not sufficient to pay and discharge all of his indebtedness. Without such knowledge or notice on the part of claimants, no fraud inhered in the transaction so far as they were concerned, and, as the sale has now been annulled on another ground, the property of the estate in bankruptcy or its value has been placed in the hands of the trustee for the benefit of creditors, I fail to see on this head any reason for not allowing the claimants to take that place in the case, through subrogation, such creditors would have assumed, had they not been paid and satisfied out of the purchase price paid by claimants.

It follows the order of the referee in allowing the demands of claimants is upheld, and his order disallowing claimants to be subrogated to the rights of the creditors of the estate which they have paid and satisfied is reversed, with direction to allow the same.

It is so ordered.